IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAJA BARRIE | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 17-30 |
| | : | |
| PROGRESSIVE SPECIALTY INSURANCE | : | |
| COMPANY, et al. | : | |

O'NEILL, J.                                                                                                  March 28, 2017

## MEMORANDUM

Plaintiff Haja Barrie brought claims in the Court of Common Pleas for Philadelphia County against her insurer, defendant Progressive Specialty Insurance Company, and defendant Megan Carrier, a Progressive insurance claims adjuster, for bad faith, breach of contract and unfair trade practices. Defendants removed to this Court, asserting diversity jurisdiction under 28 U.S.C. § 1332(a). Dkt. No. 1. Plaintiff now files a motion to remand her case, pointing out that both she and defendant Carrier share Pennsylvania citizenship. Dkt. No. 8. Defendants argue that Carrier was fraudulently joined and so her citizenship does not prevent removal under the diversity statute. Dkt. Nos. 11 and 12. I hold that some of plaintiff's factual allegations provide sufficient support to find that her unfair trade practices claim against Carrier is colorable. It follows that she was not fraudulently joined. Therefore, I will remand this case.

## BACKGROUND

In August 2016, plaintiff discovered that her car, which she had left parked on the street, had been sideswiped. Compl. ¶¶ 7–14. She reported the damage to the police and had the car towed to a body shop. Id. ¶ 15. She also contacted her insurer, Progressive. Id. ¶ 25. On August 25, Carrier requested a recorded interview with plaintiff, which plaintiff gave. Id. ¶¶ 27, 28 and Ex. B. On September 1, plaintiff's attorney, Eric Brauer, contacted Carrier on plaintiff's behalf to inquire about the status of her claim. This began an exchange in which Carrier

communicated regarding plaintiff's claim in a way that plaintiff now alleges constituted harassment and unnecessary delay. Id. at ¶¶ 18, 24, 33.

In response to Brauer's email, Carrier sent him and plaintiff a form requesting authorization for Progressive to obtain information about plaintiff from various third parties, including plaintiff's banks, credit reporting agencies and other insurers, and permission "to remove any and all fluids, electronic parts or equipment, component parts, assemblies, materials and filters" from her car "for the purposes of examination, inspection, comparison, testing, and/or storing." Id. ¶ 34 and Ex. F. Carrier also sent a letter requesting items of proof. Id. ¶ 38 and Ex. F. Some of these items related directly to plaintiff's ownership or maintenance of the car. Id. (requesting all maintenance records and most recent inspection reports for the car, proof of plaintiff's purchase of the car and "any and all pictures" plaintiff had of her car). Other items would provide proof of plaintiff's account of the accident itself. Id. (requesting the police report incident number, contact information for plaintiff's neighbor who took her to the hospital and the bill for the towing of her car). Other requested information related to plaintiff's potential expenses as a result of the damage to her car. Id. (requesting the towing bill and "Uber/Lyft transactions from July 15, 2016 to September 6, 2016"). Finally, three requests for information related to plaintiff's personal life and not directly to her car or the accident. Id. (requesting records for all incoming and outgoing calls from plaintiff's cell phone between July 15 and August 31, 2016, plaintiff's work schedule for August 2016 and the contact information for her manager at work).

Several emails passed between Carrier and Brauer over the next several weeks in which Brauer provided some of the information requested and Carrier reasserted her need for omitted documents. Id. ¶¶ 43–64. Plaintiff provided: authorization for Progressive to access her

financial information, permission to remove fluid, equipment, and parts from her vehicle, id. at ¶ 37, identification information for the individual who took her to the hospital, the police report number, ¶ 42 and Ex. H, the name and contact information for the neighbor who witnessed the collision, ¶ 43 and Ex. I, and pictures of her car, ¶ 49(e) and Ex. K. She explained that she did not have the other information or documents. Id.

Although Carrier did not continue to press plaintiff for her phone records, work schedule, or manager's contact information, Carrier reiterated her need for maintenance and inspection reports, proof of purchase of the car, emails from Kelly Blue Book regarding the listing of the car for sale, the tow bill and all Uber/Lyft receipts. Id. at ¶¶ 50, 54, 56 and Ex. L, P, R. Plaintiff reiterated that she did not have this information. Id. at ¶ 57 and Ex. S. After several email exchanges, Carrier asked for an additional interview with plaintiff. Id. ¶ 61 and Ex. T. Plaintiff alleges that this request was unnecessary, unfair and unreasonable and makes no allegations about whether she gave the additional interview. Id. Finally, on November 21, Carrier sent Brauer a letter denying coverage for plaintiff's loss because Progressive believed plaintiff had failed to cooperate with the investigation. Id. ¶ 64 and Ex. W.

On the basis of these facts, plaintiff alleges Carrier mishandled her claim by conducting the investigation "in an unfair and unreasonable manner," id. ¶¶ 18, 24, 33, and demanding unnecessary information. She alleges, first, that this was an "an attempt to harass and intimidate" plaintiff "in order to have her discontinue her claim." Id. ¶ 54. Second, she alleges that Carrier did so on account of plaintiff's race, ethnicity and citizenship status. Id. ¶¶ 17, 23, 24, 40, 41, 50, 61. She alleges Carrier "had no basis to question [her] property damage claim . . . other than the fact that [plaintiff] was an African American woman who came to the United

States of America from Sierra Leone and who legally works and resides here with a Green Card." Compl. ¶ 59.

## STANDARD OF REVIEW

A defendant can remove a civil action from state court if the claims could have been brought in federal court originally. 28 U.S.C. § 1441(a). If, as here, a defendant removes to federal court based upon diversity of citizenship under 28 U.S.C. § 1332(a), every plaintiff's state citizenship must be different from every defendant's. See also In re Briscoe, 448 F.3d 201, 215 (3d Cir. 2006). However, where parties are not diverse, a federal court may retain jurisdiction over the case only if a defendant shows that the nondiverse party was "fraudulently joined," or added to the action solely for the purposes of defeating diversity jurisdiction. Id. at 215. If a non-diverse defendant was fraudulently joined, the court can "disregard, for jurisdictional purposes," that party's citizenship and "thereby retain jurisdiction." Id. Here, both plaintiff and defendant Carrier are citizens of Pennsylvania; therefore, the court only has jurisdiction over this case if the defendants show that Carrier was fraudulently joined.

Joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). In other words, the failure must be "obvious according to the settled rules of the state." Id. at 112, citing 1A Moore's Federal Practice at 274 (2d ed. 1989). A defendant should not be considered fraudulently joined unless the claims against the defendant are "wholly insubstantial and frivolous." Briscoe, 448 F.3d at 217. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to

state court." Boyer, 913 F.2d at 112, quoting Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983).  Thus, if any one of plaintiff's claims against Carrier is colorable, joinder is proper.

In determining whether Carrier's joinder is proper, I "must resolve all contested issues of substantive fact" and "any uncertainties as to the current state of controlling substantive law" in plaintiff's favor.  Boyer, 913 F.2d at 112.  The removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand," and "a removing party who charges that a plaintiff has fraudulently joined a party to destroy diversity of jurisdiction has a heavy burden of persuasion."  Id. at 111 (internal quotation marks omitted).

In keeping with these requirements, the standard of review to assess whether joinder is fraudulent is less rigorous than an assessment of whether the plaintiff has stated a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Briscoe, 448 F.3d at 217.  "[I]t is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted . . . ."  Id.

## DISCUSSION

Plaintiff brings three claims against Carrier:  breach of contract (Count I), bad faith (Count II) and unfair trade practices under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa. Stat. Ann. § 201-1, *et seq.* (Count III).  Because I find that some of plaintiff's allegations state a colorable claim under the UTPCPL against Carrier, I need not consider the viability of her other claims.

The UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."  73 Pa. Stat. Ann. § 201-3.  This includes certain categories of conduct listed in § 201-2 as well as "any other fraudulent or

5

deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Stat. Ann. § 201-2(4)(xxi).  Additionally, the UTPCPL provides a private right of action to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of" the defendant's "use or employment . . . of a method, act or practice declared unlawful by section 3 of this act . . . ." 73 Pa. Stat. Ann. § 201-9.2.  The UTPCPL should be "liberally construed to effectuate its objective of protecting the consumers of this Commonwealth from fraud and unfair or deceptive business practices." Ash v. Cont'l Ins. Co., 932 A.2d 877, 881 (Pa. 2007).

Plaintiff alleges Carrier violated the UTPCPL by 1) delaying the investigation and requesting unnecessary personal information and 2) harassing and intimidating plaintiff because of her racial, ethnic and citizenship status.[1]  The second basis for plaintiff's claim is groundless. Plaintiff provides no specific allegations suggesting that Carrier harassed plaintiff on the basis of her race, ethnicity, or citizenship status; she merely repeats conclusory statements alleging this motivation.  Although I do not review the complaint to determine whether plaintiff's claims are "plausible" under Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), but employ the less rigorous standard of determining whether they are more than "frivolous," Briscoe, 448 F.3d at 217, plaintiff's bare allegations of racial animus do not meet this lower standard.  There is "no

---

[1] Plaintiff also alleges Carrier made a "false and disingenuous statement" to Brauer when she emailed Brauer stating that she would review plaintiff's information "as quickly as possible." Id. ¶ 52.  After making this promise on Thursday, September 28, Carrier sent an email on Monday, October 3, requesting additional information. Id. ¶¶ 52–53.  Although not explicit, it appears plaintiff contends that Carrier's September 28 statement was a misrepresentation because two business days is not "as quickly as possible" when it pertains to the review of plaintiff's information.  This is a frivolous allegation, and plaintiff does not press it. See id. at ¶ 105 (listing the ways in which Carrier allegedly violated the UTPCPL, and not mentioning this misrepresentation).

6

reasonable basis in fact or colorable ground supporting" this ground for her claim against Carrier. Boyer, 913 F.2d at 111.

But a state court could conclude that the first basis for plaintiff's claim alleging that Carrier requested unnecessary information has some factual support in her complaint and so is not wholly insubstantial and frivolous. Plaintiff alleges Carrier delayed processing her claim and harassed her by demanding unnecessary information, including more than a month's worth of her personal cell phone records, proof of her hospital visit, her work schedule, and contact information for her manager at work. Additionally, she alleges Carrier continued to insist on records that plaintiff explained she did not have. Plaintiff alleges Carrier did this in order to discourage plaintiff's pursuit of her claim. A state court could find that Carrier's requests for this personal information amounted to deceptive conduct that created a likelihood of confusion or misunderstanding about the requirements for recovery under plaintiff's insurance policy. While Carrier did not press her requests for some of plaintiff's personal information and ultimately reiterated only the more relevant requests for information about plaintiff's car and losses resulting from her car's damage, her initial requests may be sufficiently unfounded and sufficiently likely to create confusion to satisfy the UTPCPL. Although not an easy case, I find that these allegations raise plaintiff's claim above the level of being "wholly insubstantial."

In coming to this conclusion, I bear in mind that my task is not to evaluate whether plaintiff has successfully stated a claim under Rule 12(b)(6), and that I must resolve all doubts in favor of remand. Boyer, 913 F.2d at 111. Considering this standard, I conclude that plaintiff's allegations against Carrier on the basis of these requests for personal information are not entirely frivolous.

7

It is defendants' burden to show that the failure of plaintiff's claim against Carrier is "obvious according to the settled rules" of Pennsylvania. Boyer, 913 F.2d at 112. Defendants put forth a number of arguments in support of their motion in opposition to remand, but these do not show that plaintiff's claim is wholly insubstantial and frivolous.

First, defendants argue that plaintiff's claim is frivolous because plaintiff had no contractual relationship with Carrier. Def.'s Br. at 4–8, 10–14. In support, they identify cases dismissing UTPCPL claims where the plaintiff and defendant were not in privity. But none of these cases addresses a claim against an employee of the insurance company; all address more removed commercial relationships. See Katz v. Aetna Casualty & Surety Co., 972 F.2d 53, 56 (3d Cir. 1992) (denying plaintiff's UTPCPL claim against an insurance company where that company had not insured plaintiff, but rather insured the driver of the car plaintiff was in when he got in an accident); Elia v. Erie Ins. Exchange, 581 A.2d 209, 212 (Pa. Super. Ct. 1990) (affirming the entry of judgment in favor of the defendant physician because the plaintiff "did not purchase services or goods from [the defendant], whose services were purchased by [the plaintiff's insurance company] to assist it in evaluating [the plaintiff's] claim against [it]"); Wedemeyer v. U.S. Life Ins. Co., No. 05-6263, 2007 U.S. Dist. LEXIS 15742, at *4, *49 (E.D. Pa., March 6, 2007) (granting summary judgment for the defendant on claims against a company that provided disability services "as an independent contractor and not as an employee or partner of" the plaintiff's insurer, because the company was not in any trade or commercial relationship with the plaintiff); Brownell v. State Farm Mut. Ins. Co., 757 F. Supp. 526, 533 (E.D. Pa. 1991) (dismissing UTPCPL claims against an external auditor hired by the insurer because the complaint alleged "no commercial relationship between [the] plaintiff and [the auditor]"). Some extrapolation is required to connect the facts of the cited cases to the allegations before me.

8

Here, unlike in those cases, Carrier is an employee of the insurance company and therefore had a distinctive commercial relationship with both plaintiff and the insurance company by virtue of her employment. The cited cases could be distinguished on this ground. See e.g., Horne v. Progressive Advanced Ins. Co., No. 15-1029, 2015 U.S. Dist. LEXIS 53824 at *1 (E.D. Pa. April 24, 2015) (considering these same cases and explaining that they are "inapposite" because "[i]n each of the three cases, the individual defendants were one step removed from any transaction with [the] plaintiff").

Furthermore, other federal courts have determined that Pennsylvania law might allow UTPCPL claims against individual insurance claims representatives and found the individuals were not fraudulently joined. See Kennedy v. Allstate Prop. & Casualty Ins. Co., No. 15-2221, 2015 U.S. Dist. LEXIS 88327 at *19 (E.D. Pa. July 8, 2015) (explaining that "multiple courts have concluded that claims under the UTPCPL against insurance adjusters are colorable under Pennsylvania law"), Horne, 2015 U.S. Dist. LEXIS 53824 at *1, citing; Hennessey v. Allstate Ins. Co., No. 13-6594, 2014 U.S. Dist. LEXIS 51066 at *9 (E.D. Pa. April 14, 2014); Kapton v. Ohio Casualty Ins. Co., No. 14-69, 2014 U.S. Dist. LEXIS 53168 at *13 (W.D. Pa. Apr. 17, 2014); Grossi v. Travelers Ins. Co., No. 9-1427, 2010 U.S. Dist. LEXIS 9929 at *5 (W.D. Pa. Feb. 5, 2010); Ozanne v. State Farm Mutual Auto. Ins. Co., No. 11-327, 2011 U.S. Dist. LEXIS 48611 at *5 (W.D. Pa. May 5, 2011).

Second, defendants cite two cases that dismissed claims like plaintiff's for failure to state a claim against an insurance claims representative. Defs.' Br. at 18, citing Horne v. Progressive Advanced Ins. Co., et al., No. 150103528 (Pa. Com. Pl. July 22, 2015) (Phila. Cnty.); 4-Way Transp. v. Progressive Commercial Cas. Co., et al., No. 150802578 (Pa. Com. Pl. Aug. 10, 2016) (Phila. Cnty.). But these cases do not show that settled Pennsylvania law obviously forecloses

plaintiff's claim. Besides these two cases, there is an absence of Pennsylvania case law on this topic. In Horne v. Progressive Advanced Insurance, the court noted that its research yielded no other cases addressing whether an insurance adjuster could be held liable under the UTPCPL. 2015 U.S. Dist. LEXIS 53824 at *5. Now, less than two years after Horne, the existence of these two cases is not enough to convince me that plaintiff's claim is obviously foreclosed.

Third, defendants cite cases holding that the UTPCPL "does not apply to the handling of insurance claims" at all. Defs.' Br. at 8–10, citing Doherty v. Allstate Ins. Co., No. 15-5165, 2016 U.S. Dist. LEXIS 132027 at *23 (E.D. Pa. Sept. 27, 2016); Kelly v. Progressive Advanced Ins. Co., 159 F. Supp. 3d 562, 565 (E.D. Pa. 2016) ("[A]n insured cannot bring an action under the UTPCPL based on the insurer's failure to pay a claim or to investigate a claim."); Gibson v. Progressive Specialty Ins. Co., No. 15-1038, 2015 U.S. Dist. LEXIS 63144 at *12 (E.D. Pa. May 12, 2015) (surmising, based on a Court of Common Pleas opinion, that the Pennsylvania Supreme Court "would hold that the UTPCPL solely relates to claims concerning the improper sale of a policy and the statutory bad faith act is limited to claims concerning the handling of an insurance claim"); Mondron v. State Farm Mut. Auto. Ins. Co., No. 16-412, 2016 U.S. Dist. LEXIS 176404 at *15 (W.D. Pa. Dec. 21, 2016) (dismissing plaintiff's UTPCPL claim in part because "allegations of misconduct in the claims handling process are not actionable under the UTPCPL"); see also Bodnar v. State Farm Mut. Ins. Co., No. AR08-1337 (Pa. Com. Pl., Oct. 21, 2008) (Allegheny Cnty.).

But other cases have permitted UTPCPL claims against insurance companies for mishandling claims. See Kapton, 2014 U.S. Dist. LEXIS 53168 at *13 (holding that the plaintiff's claims against an insurance adjuster were colorable under the UTPCPL because they rose to the level of "misfeasance," or "the improper performance of a contractual obligation,"

10

which occurs "where an adjuster conducts or fails to conduct a post-loss investigation in an unfair or unreasonable manner"); Ozanne, 2011 U.S. Dist. LEXIS 48611 at *11, citing Smith v. Nationwide Mut. Fire Ins. Co., 935 F. Supp. 616, 622 (W.D. Pa. 1996) (refusing to dismiss a UTPCPL claim against insurance companies where the plaintiff alleged they engaged in fraudulent conduct in the claims evaluation process); Parasco v. Pacific Indem. Co., 870 F. Supp. 644, 645 (E.D. Pa. 1994) (refusing to dismiss a UTPCPL claim against an insurer based on allegations "that the post-loss investigation was conducted in an unfair and nonobjective manner" and that the defendant "made misrepresentations concerning the nature of its contractual obligations"); see also See Pekular v. Eich, 513 A.2d 427, 433–34 (Pa. Super. Ct. 1986) (allowing UTPCPL claims for mishandling an insurance claim to proceed).

Fourth, and finally, Defendants argue that plaintiff has failed to satisfy the UTPCPL's requirement that she suffered loss "as a result of" Carrier's misconduct. Defs.' Br. at 14–16; 73 Pa. Stat. Ann. § 201-9.2. "[A] plaintiff must show that [s]he justifiably relied on the defendant's wrongful conduct or representation and that [s]he suffered harm as a result of that reliance." Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004). It is not clear how the reliance requirement applies in the context of bad faith handling of insurance claims since such claims by their nature do not involve buying goods or services in reliance on the seller's fraudulent statements. Given the absence of law showing how to apply the reliance requirement in the context of the mishandling of an insurance claim, any pleading deficiency in this regard is not so grave as to make plaintiff's claim "wholly insubstantial and frivolous."

It is defendants' burden to demonstrate that Pennsylvania law is clear with respect to the viability of a UTPCPL claim against an insurance claims representative. They have not shown conclusively that plaintiff's claim against Carrier, based on allegations that she delayed the

11

investigation and requested unnecessary personal information in handling plaintiff's claim, is wholly insubstantial and frivolous. Although this is not an easy case, I conclude that I cannot find that there is no "possibility that a state court would find that the complaint states a cause of action against" Carrier on the grounds plaintiff puts forth in her complaint. Boyer, 913 F.2d at 112. Therefore, I find Carrier properly joined, necessitating remand of this case.

An appropriate Order follows.